**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **FUTURECARE HEALTH AND MANAGEMENT CORPORATION**, *et al.*, | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| v. | * | Civil Case No. SAG-25-03455 |
| | * | |
| **AFFILIATED FM INSURANCE COMPANY,** | * | |
| | * | |
| **Defendant.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiffs FutureCare Health and Management Corporation ("FutureCare"), Bay Manor Real Estate Ltd., PTNSHP ("Bay Manor") and Bay Manor Nursing Home, Inc. ("the Nursing Home" and, collectively, "Plaintiffs") filed this action against their insurance company, Affiliated FM Insurance Company ("Affiliated"), seeking coverage for a property damage claim. ECF 9. Two motions are presently pending: Affiliated's motion to dismiss Count I, ECF 12, and Plaintiffs' motion to compel appraisal and stay this action pending issuance of the appraisal award, ECF 17. This Court has reviewed the oppositions and replies to the respective motions, ECF 15, 16, 18, 20, and held a telephonic hearing on January 29, 2026. Following that hearing, the parties exchanged additional information and submitted supplemental filings, which this Court has also considered. ECF 24, 26, 27. For the reasons that follow, this Court will deny both motions.

**I.    FACTUAL BACKGROUND AND SUMMARY OF DISPUTE**

The facts relevant to these motions are largely undisputed, except as to the scope of insurance coverage. Bay Manor owns the building and improvements at 305 College Parkway, Arnold, Maryland ("the Property"), where the Nursing Home is located. ECF 17-1 at 3; 12-1 at 1.

On or about November 16, 2023, staff observed that a ceiling near the nurses' station had begun to fail, creating a dangerous condition. ECF 17-1 at 7. Ultimately, experts determined that the building's support trusses, which had been treated decades ago with fire-retardant chemicals, had lost their ability to support the Nursing Home's structure. *Id.* at 3. The Nursing Home sustained damage to its ceiling and wall drywall and its HVAC, plumbing, and electrical components, among other items. *Id.* at 4. In addition, the Nursing Home was uninhabitable during repairs, leading to business interruption loss. *Id.* Plaintiffs have filed proofs of loss claiming building damage exceeding $5 million and business interruption and extra expense also exceeding $5 million. *Id.* at 8.

Affiliated had issued policies of insurance to Plaintiffs for the Property, with coverage periods from November 15, 2022 to November 15, 2023 and November 15, 2023 to November 15, 2024 (collectively, the "Policy"). ECF 17-1 at 6.  The Policy's exclusions include the following:

- Wear and tear, deterioration, depletion, rust, corrosion, erosion, inherent vice or latent defect;

- Faulty workmanship, material, construction or design, and

- Settling, cracking, shrinking, bulging or expansion of foundations, walls, floors, pavements or roadways, roofs, or ceilings.

ECF 4-1 at 22–23, 4-2 at 22–23.

The parties disagree, based on those exclusions, whether damage to the defective trusses themselves is excluded from coverage. They agree that "the policy would afford coverage for resulting damage to property separate from, and not inextricably related to, the defective trusses, subject to all of the Policy's terms and conditions." ECF 17-8 at 8. But they further disagree whether any property damage fitting that category exists. In sum, there is no agreement that coverage exists for any claimed damages.

2

Plaintiffs contend that "collapse is an insured peril under the clear terms of the Policy" and that they sustained a collapse under Maryland law. *Id.* They further contend that everything except the trusses falls within "coverage for resulting damage to property separate from the defective trusses." ECF 17-1 at 4. Affiliated counters that "insured peril" or "named peril" is in a section of the Policy about "Tenants Legal Liability" that is not pertinent to the coverage claim. ECF 17-8 at 8. Regardless, Affiliated argues that all of the damages Plaintiffs claim resulted from or are intertwined with the defective trusses, such that the exclusions preclude coverage for the loss as a whole.

This lawsuit ensued. Plaintiffs' Amended Complaint contains two counts: Count I seeks a declaratory judgment, and Count II alleges breach of contract. ECF 9. Plaintiffs seek to invoke the Policy's appraisal clause, which reads:

> If the Insured and this Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:
> 1. The Insured has fully complied with all provisions of this Policy.
> 2. The Company has received a signed and sworn Proof of Loss from the Insured.
> Each will notify the other of the appraiser selected within 20 days of such demand. The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within 30 days then, on the request of the Insured or this Company, the umpire will be selected by a judge of a court of record in the jurisdiction in which the appraisal is pending. The appraisers will then appraise the amount of loss, stating separately the actual cash value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage or if, for Business Interruption loss, the amount of loss for each Business Interruption coverage of this Policy.
> If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two will determine the amount of loss.

ECF 4-1 at 49, 4-2 at 49. Affiliated disagrees, arguing that appraisal is not appropriate because it owes no coverage under the Policy's terms.

## II.    MOTION TO COMPEL APPRAISAL

Plaintiffs seek to compel appraisal of the amount of loss and to stay this case pending the appraisal's outcome. ECF 17. They argue that this Court should hold Affiliated to its agreement to engage in appraisal because it is the equivalent of an agreement to arbitrate under the Federal Arbitration Act, which must be enforced. Affiliated counters that the parties agreed to appraisal only to determine the "amount of loss" where there is disagreement, and that appraisal is premature here because there is an initial issue of policy coverage. This Court agrees with Affiliated.

Both parties invoke the well-reasoned case of *Gray v. Phila. Contributionship*, 748 F. Supp. 3d 367 (D. Md. 2024). In *Gray*, a "wind, hail, and flying debris" storm damaged an insured home. *Id.* at 371. The insurance policy contained a similar appraisal clause to the one in the Policy here. *Id.* When the homeowners sought to enforce the appraisal clause and stay the litigation, the insurance company resisted on three grounds, one of which was, "Plaintiffs are seeking to use appraisal to obtain coverage beyond the amount to which they are entitled under the terms of the policy." *Id.* at 373. While both *Gray* parties agreed that some of the homeowners' loss was covered, their dispute centered on whether they were entitled to recover payment for the public adjuster's fee, which the insurance company argued was not a category of loss covered by the policy. *Id.* at 376. In light of the fact that the parties disagreed "over one (fairly small) category of coverage," the Court adopted the "eminently pragmatic" approach of ordering appraisal but requiring the appraiser to itemize the damages in his reports. *Id.* That approach "recognizes Plaintiff's contractual right to invoke appraisal under the Policy, preserves Defendant's ability to contest the scope of covered losses under the Policy following that appraisal, and accords with the Court's general sentiment of encouraging alternate dispute resolution methods for the sake of efficiency and judicial economy." *Id.*

This case, however, presents in a different posture than *Gray.* Here, it is not clear whether the parties contest the "amount of loss" at all[1] and there is no "fairly small" category of damages in dispute. What is contested is whether *any* of the damages Plaintiffs sustained fall within the scope of coverage. Affiliated contends that the entirety of their damages resulted from the failed trusses and are therefore excluded from coverage. *See* ECF 27 (citing *Jowite Ltd. P'ship v. Fed. Ins. Co.*, No. DLB-18-2413, 2020 WL 4748544, at *8–9 (D. Md. Aug. 17, 2020) (finding no coverage where "any loss or damage caused by the collapse is not 'wholly separate from the defective property itself.'") (quoting *Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, 611 F. Supp. 3d 41, 59 (D. Md. 2020)). As Judge Coulson summarized in *Thompson v. Allstate Prop. & Cas. Ins. Co.*, No. 22-2379-JMC, 2024 WL 3161586, at *5 (D. Md. 2024):

> [T]his Court has noted that invoking the appraisal process is proper where both parties agree that there exists a covered loss under an insurance policy but disagree as to the precise value of that covered loss. Conversely, the appraisal process is improper where a party attempts to use it as a conduit for additional coverage beyond that which falls within the scope of the relevant insurance policy.

Here, Affiliated disavows coverage for any of Plaintiffs' losses, regardless of their value, because it argues that they are all inextricably related to the defective trusses and are therefore excluded. That coverage dispute must be decided by the Court first. If this Court determines that there is some amount of covered loss, and the parties disagree about its value, then appraisal will be warranted under the terms of the Policy. But in this case, it would not accord with the Policy's plain language, or serve the interests of efficiency or judicial economy, to defer this Court's ruling on the coverage issue in favor of the appraisal in the absence of any existing dispute about the

---

[1] Affiliated is not arguing, at present, that the claimed damage amounts are inflated or incorrect. It simply contends that the damages fall within the Policy's exclusions.

value of Plaintiffs' loss. Plaintiffs' motion to compel appraisal will therefore be denied without prejudice to re-raising it once the coverage issues have been decided by this Court.

## III.   MOTION TO DISMISS

Affiliated filed a motion to dismiss Count I of Plaintiffs' complaint, arguing that their request for declaratory relief is duplicative of their breach of contract claim and that their request for appraisal fails to allege an actual controversy because coverage is not yet established. ECF 7. Both of those issues will be more appropriately considered as this litigation proceeds, because "arbitration" in the form of appraisal may later be warranted. Moreover, because Count I raises factual issues that will be addressed in this litigation regardless, leaving it pending will not expand the scope of the litigation (or discovery) in any meaningful way. Accordingly, this Court declines to dismiss Count I at this stage but will deny Affiliated's motion without prejudice to its renewal later in the proceedings.

## IV.   CONCLUSION

For the reasons set forth above, both Plaintiffs' motion to compel arbitration and stay this case, ECF 17, and Affiliated's motion to dismiss Count I, ECF 12, will be DENIED WITHOUT PREJUDICE. A separate order follows.

Dated:  July 6, 2026

_____/s/_____
Stephanie A. Gallagher
United States District Judge

6